```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA              :

            - against -              :

SAHULON BALLESTEROS,                  :

                Defendant.            :

- - - - - - - - - - - - - - - - -x
```

**MEMORANDUM DECISION**

06 Civ. 6927 (DC)
03 Cr. 347 (DC)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/16/07

**APPEARANCES:**    MICHAEL J. GARCIA, ESQ.
                    United States Attorney for the
                    Southern District of New York
                        By:  Glen McGorty, Esq.
                        Assistant United States Attorney
                    One Saint Andrew's Plaza
                    New York, New York  10007

                    SAHULON BALLESTEROS
                    Defendant Pro Se
                    FCI Coleman Low
                    P.O. Box 1031
                    Coleman, Florida  33521

**CHIN, D.J.**

        Defendant Sahulon Ballesteros pled guilty to an
indictment charging him with one count of ccnspiracy to import
and export five kilograms or more of cocaine. He was sentenced
to a term of imprisonment of 120 months. Ncw proceeding pro se,
Ballesteros moves pursuant to 28 U.S.C. § 2255 to vacate, set
aside, or correct his sentence on the grounds that (1) his plea
was involuntary because he did not understand the charges against
him or the consequences of his plea, (2) the Court erred in
failing to determine the exact quantity of drugs attributable to
him before imposing the mandatory minimum sentence of ten years,

and (3) he was denied effective assistance of counsel.  For the reasons set forth below, the motion is denied.[1]

## BACKGROUND

### A.  The Facts

From 1990 through 2000, Alberto Orlande Gamboa arranged for the shipment of more than 100,000 pounds of cocaine from Colombia and Venezuela into the United States and other countries.  (PSR ¶ 10).[2]  To assist him, German Libonatty, William San Miguel, Julio Annicharico Santrich, Danilo Caballero, Alvaro Caballero, Armando Davila, Musa Jacob Nader Romanos, and the defendant, Sahulon Ballesteros, helped establish and maintain drug trafficking routes between Colombia and the United States.  (Id. at ¶ 11).  From 1996 through 1998, these individuals, including Ballesteros, conspired to ship cocaine from Colombia and Venezuela to the United States.  (Id. at ¶ 19-20).  Ballesteros was also Gamboa's personal assistant from 1996 through 1997.  (Plea Tr. 13).  Generally, Ballesteros drove a car

---

[1]     Because I find that "it plainly appears from the face of the [section 2255] motion . . . and the prior proceedings in the case that [Ballesteros] is not entitled to relief," I do not order the United States Attorney to file an answer to the instant motion.  See Rules Governing Section 2255 Proceedings for the U.S. Dist. Courts 4(b); Armienti v. United States, 234 F.3d 820, 822-23 (2d Cir. 2000).

[2]     References are as follows: "Indictment" to the Indictment dated March 26, 2003 (03 Cr. 347); "Plea Agmt." to Ballesteros's plea agreement dated November 11, 2005; "Plea Tr." to the transcript of Ballesteros's plea allocution; "PSR" to the pre-sentence report dated February 24, 2006; "Sen. Tr." to the transcript of Ballesteros's sentencing; and "Def. Mot." to Ballesteros's § 2255 motion.

to transport Gamboa around Cali, Colombia and delivered messages
to and from Gamboa in connection with the cocaine trafficking.
(Id.).[3]

## B.  **Prior Proceedings**

Ballesteros was indicted on March 26, 2003 for
conspiracy to import cocaine into the United States from Colombia
and Venezuela.  By letter dated November 11, 2005, Ballesteros
entered into a plea agreement -- which was negotiated by his
attorney, Martin L. Schmukler, Esq. -- with the Government.  The
plea agreement provided that Ballesteros would plead guilty to
violating 21 U.S.C. §§ 963, 952(a), and 960(b)(1)(B), in
connection with his participation in a conspiracy to distribute
at least 150 kilograms of cocaine.  (Plea Agmt. 2).  The parties
stipulated to a total offense level of 27 and a criminal history
category of I.[4]

---

[3]     The Indictment also includes the following: "In or
about 1997 Julio Annicharico Santrich gave Sahulon Ballesteros
approximately 10,000 Colombian Pesos (equivalent to approximately
5,000 United States dollars at the time) as payment for the
murder of a suspected informant."  (Indictment ¶ 5).  This
allegation, however, was not mentioned in the plea agreement or
in any subsequent court proceeding.

[4]     The parties agreed that the November 1, 2000 guidelines
manual determined Ballesteros's sentencing guidelines
calculation.  Pursuant to U.S.S.G. § 2D1.1(c)(4), the applicable
base offense level for Count One of the indictment was 38.
Because the defendant received an adjustment under U.S.S.G.
§ 3B1.2, for his minor role in the conspiracy, the base offense
level was capped at 30.  After additional stipulated adjustments,
the final offense level for Count One of the Indictment was 27.
(Plea Agmt. 2).

An offense level of 27 with a criminal history category of I carries a guideline range of 70 to 87 months.  As explained in the plea agreement, however, because Ballesteros was pleading guilty to a conspiracy involving five or more kilograms of cocaine he was subject to a mandatory minimum of 120 months imprisonment absent relief under the safety valve, 18 U.S.C. § 3553(f).  (Plea Agmt. 2).  Ballesteros further stipulated that he used "violence or credible threats of violence or possessed a firearm or other dangerous weapon in connection with the offense," which rendered the safety valve inapplicable.  (Id. at 3).  Hence, as Ballesteros stipulated in the plea agreement, he was not eligible for the safety valve and his guideline sentence was 120 months -- the minimum sentence proscribed by law.  (Id. at 2-3).  The plea agreement also contained a waiver of Ballesteros's right to appeal or otherwise litigate under 28 U.S.C. §§ 2255 and/or 2241 any sentence at or below the stipulated guideline sentence of 120 months.  (Id. at 4).

On December 19, 2005, Ballesteros appeared before me and with the assistance of an interpreter pled guilty pursuant to the plea agreement.  Ballesteros confirmed that he discussed the plea agreement with his attorney and that he fully understood it before signing.  (Plea Tr. 4, 11-12).  He further confirmed that he understood the consequences of pleading guilty and that he was entering his plea knowingly and voluntarily.  (Id. at 4-7, 9-12, 17-19).  The allocution also included the following colloquy:

- 4 -

THE COURT:       All right. No one, not your lawyer, not
                 the government, can make promises to you
                 as to what your sentence will be.
                 Because I cannot decide what your
                 sentence is until after the presentence
                 report is completed, I've ruled on any
                 objections to the report, and I have
                 decided whether there is any basis to go
                 above or below the guidelines range.  Do
                 you understand that?

THE DEFENDANT: Yes.

THE COURT:       And in the end, if it should turn out
                 that your sentence is different from
                 what you expect or from what anyone has
                 told you it might be, you will still be
                 bound to your guilty plea and you will
                 not be allowed to withdraw your plea of
                 guilty?  Understood?

THE DEFENDANT: Yes.

THE COURT:       All right.  Now in your plea agreement,
                 you agree that you would not appeal or
                 otherwise try to challenge any sentence
                 at or below the stipulated sentence of
                 120 months.  Do you understand that?

THE DEFENDANT: Yes.

THE COURT:       And according to the plea agreement, it
                 appears that your sentence will be 120
                 months, that the mandatory minimum
                 applies.  And that your sentence will be
                 no less than 120 months.

THE COURT:       Okay.  Does that change anything?  Does
                 that change your mind?

THE DEFENDANT: No.

(Id. at 10-11, 18).  I accepted Ballesteros's plea.  (Id. at 19).

Following the plea allocution, the Probation Department
prepared a presentence report ("PSR") containing a calculation of
the appropriate sentence under the sentencing guidelines.  The
PSR set the total offense level at 31, the criminal history

- 5 -

category at I, and the guidelines sentencing range at 120 to 135 months.  (PSR 15).  The Probation Department recommended a term of imprisonment of 120 months.  (Id.).  The parties did not object to the PSR.  (Id. at 14).

At sentencing on March 3, 2006, Ballesteros's attorney urged the Court to impose a sentence no greater than the mandatory minimum sentence of 120 months.  (Sen. Tr. 3-4).  I accepted and adopted the PSR's guidelines calculation as to the total offense level, criminal history category, and guidelines range, which was consistent with the parties' plea agreement.  (Sen. Tr. 3).  I sentenced Ballesteros to the minimum possible sentence, 120 months imprisonment.  (Id. at 9).

Ballesteros did not appeal.  On September 11, 2006, he filed this motion.

## DISCUSSION

Ballesteros's motion is denied.  First, he waived his right to challenge his sentence, whether by a motion under 28 U.S.C. § 2255 or otherwise.  Second, even assuming that Ballesteros is not precluded from challenging his sentence, the motion is denied on the merits.

## A.   Waiver of Rights

In his plea agreement, Ballesteros explicitly agreed that he would "neither appeal, nor otherwise litigate under Title 28, United States Code, Section 2255, any sentence within or below the stipulated Guidelines range."  (Plea Agmt. 4).  The Second Circuit has held such waivers enforceable:

> In no circumstance . . . may a defendant, who
> has secured the benefits of a plea agreement
> and knowingly and voluntarily waived the
> right to appeal a certain sentence, then
> appeal the merits of a sentence conforming to
> the agreement.  Such a remedy would render
> the plea bargaining process and the resulting
> agreement meaningless.

United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir.
1993); see also United States v. Djelevic, 161 F.3d 104, 106-07
(2d Cir. 1998) (knowing and voluntary waiver of right to appeal
sentence within agreed upon guideline range is enforceable).

        The Second Circuit has also held, however, that "a
waiver of appellate or collateral attack rights does not
foreclose an attack on the validity of the process by which the
waiver has been produced, here, the plea agreement."  Frederick
v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195 (2d Cir.
2002) (citing United States v. Hernandez, 242 F.3d 110, 113-14
(2d Cir. 2001) (per curiam)).  Accordingly, the district court
"does not automatically enforce § 2255 waivers in the face of
ineffectiveness of counsel, as such claims 'may call into
question the very legitimacy of the § 2255 waivers.'" Itzkowitz
v. United States, No. 04 Civ. 63, 2004 WL 1672451, at *2
(S.D.N.Y. July 27, 2004) (citing Mendez v. United States, No. 01
Civ. 2924, 2002 WL 226693, at *2 (S.D.N.Y. Feb. 13, 2002)
(quoting Paulino v. United States, No. 01 Civ. 1174, 2001 WL
630486, at *2 (S.D.N.Y. June 6, 2001))).

        Ballesteros's motion must be denied because he waived
his right to appeal or otherwise challenge his sentence.  First,
I conducted a thorough allocution and specifically asked

- 7 -

Ballesteros whether he understood that he was giving up his right to appeal or in any other way litigate his sentence if it fell within the range stipulated by the plea agreement, and Ballesteros responded affirmatively.  (Plea Tr. 11).  Second, Ballesteros confirmed that (1) he discussed the plea agreement with his attorney, (2) the plea agreement was translated and he fully understood it before signing, and (3) he had not been induced or forced in any way to enter into the plea agreement. (Id. at 12).  Third, Ballesteros confirmed that he was satisfied with his attorney's representation of him.  (Id. at 4).  Finally, as discussed below, Ballesteros's ineffective assistance of counsel claim fails on the merits.

Consequently, I find that the plea agreement is valid. Because I sentenced Ballesteros to the stipulated sentence of 120 months, he has waived his right to challenge his sentence and is precluded from making this motion.

**B.   The Merits**

On the merits, Ballesteros argues that: (1) his plea was not entered knowingly and voluntarily because he did not understand that he was waiving his right to a jury trial on the issue of the quantity of drugs attributable to him, (2) the Court fundamentally erred in not determining the drug quantity attributable to him before imposing a mandatory minimum sentence, and (3) he received ineffective assistance of counsel when his lawyer failed to: (a) object or raise the issues addressed in (1) and (2) above, (b) argue that he was eligible for the safety

valve, and (c) inform him of the consequences of the plea
agreement.

1.   **Right to Jury Determination of Drug Quantity**

Ballesteros claims that his plea was made unknowingly
and involuntarily because he was never advised that he was
waiving his right to have a jury determine, beyond a reasonable
doubt, the drug quantity attributable to him.  (Def. Mot. 15).

Ballesteros's contention, however, is refuted by the
record.  First, he stipulated in the plea agreement that he was
responsible for a total quantity of cocaine of at least 150
kilograms.  (Plea Agmt. 2).  Second, during the plea allocution
he acknowledged that he had discussed the agreement with his
attorney and fully understood it before signing.  (Plea Tr. 11-
12).  Third, when the Court asked at the plea allocution whether
the conspiracy involved at least 150 kilograms, Ballesteros
answered in the affirmative.  (Id. at 15).

Based on the foregoing, there was no need for a jury
trial because Ballesteros clearly stipulated to the quantity of
drugs -- at least 150 kilograms of cocaine.  As the Second
Circuit has held, a "criminal defendant's self-inculpatory
statements made under oath at his plea allocution carry a strong
presumption of verity and are generally treated as conclusive in
the face of the defendant's later attempt to contradict them."
Adames v. United States, 171 F.3d 728, 732 (2d Cir. 1999)
(internal citations and quotation marks omitted); United States
v. Gonzalez, 970 F.2d 1095, 1100 (2d Cir. 1992) (finding that

defendant's statements at plea allocution are conclusive absent reasons justifying departure from their apparent truth). Moreover, Ballesteros was specifically advised that he was waiving his right to a jury trial.  (Plea Tr. 5).  This aspect of the motion is therefore denied.

**2.    Fundamental Error in Not Determining Drug Quantity**

Ballesteros argues that the Court erred in not determining the drug quantity attributable to him before imposing the mandatory minimum sentence of ten years.  This argument fails for, again, Ballesteros stipulated to quantity -- at least 150 kilograms of cocaine, far more than the five kilograms needed to trigger the mandatory minimum.

Even if I did not explicitly determine the amount of drugs attributable to Ballesteros, in light of the stipulation I could not have found differently.  See United States v. Champion, 234 F.3d 106, 109-10 & n.3 (2d Cir. 2000) ("[A]t trial, [defendant] stipulated to the quantity of drugs involved in his crime . . . .  Under the stipulation, a jury could not have . . . .").  Because Ballesteros stipulated that the conspiracy involved over five kilograms of cocaine, I did not need to determine the amount of cocaine attributable to him beyond that.

**3.    Ineffective Assistance of Counsel**

To prevail on his claim of ineffective assistance of counsel, Ballesteros must show that (1) his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) he was prejudiced by

counsel's deficient performance.  See Strickland v. Washington,
466 U.S. 668, 686-88 (1984).  When applying the Strickland test,
"judicial scrutiny of counsel's performance must be highly
deferential."  Id. at 689.  "The court's central concern is not
with 'grad[ing] counsel's performance,' . . . but with discerning
'whether, despite the strong presumption of reliability, the
result of the particular proceeding is unreliable because of a
breakdown in the adversarial process that our system counts on to
produce just results.'"  United States v. Aguirre, 912 F.2d 555,
561 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 696).

        Where a defendant challenges a guilty plea on the basis
of alleged ineffective assistance of counsel, to satisfy the
second prong of the Strickland test the defendant must show that,
but for counsel's error, there is a reasonable probability that
he would not have pled guilty.  Hill v. Lockhart, 474 U.S. 52, 59
(1985); Tate v. Wood, 963 F.2d 20, 23-24 (2d Cir. 1992).

        Ballesteros argues that he was denied effective
assistance of counsel on four grounds.  First, he claims
Schmukler failed to object when I accepted Ballesteros's plea
without first advising him that he was waiving his right to have
a jury determine, beyond a reasonable doubt, the amount of drugs
attributable to him.  Second, Ballesteros claims that counsel
should have objected when I imposed the sentence without
determining the amount of drugs attributable to him.  Third,
Ballesteros claims that he was uninformed of the consequences of
pleading guilty and was unaware that he was waiving his right to

- 11 -

challenge his sentence on appeal or collaterally.  Lastly,
Ballesteros argues that he received ineffective counsel because
Schmukler failed to argue that Ballesteros was eligible for the
safety valve provision under 18 U.S.C. § 3553(f).

     The first and second grounds for his ineffective
counsel claim are refuted by the record, for the reasons stated
above.  Ballesteros had already stipulated to the drug quantity,
so Schmukler had no duty to object on the grounds that
Ballesteros had a right to have a jury determine quantity or that
the Court should have determined a specific quantity.  See Mungin
v. United States, No. 01 Civ. 5826, 2002 WL 109609, at *2
(S.D.N.Y. Jan. 25, 2002) (concluding that where defendant
stipulates to an element in the plea agreement, it would serve
little, if any, purpose for defense attorney to object to that
element at sentencing).

     The third ground is rejected, for, as discussed above,
Ballesteros explicitly agreed in the plea agreement to waive his
right to appeal or collaterally attack his conviction, and I
discussed this with him on the record at the plea allocution.
(Plea. Tr. 11).

     Finally, Ballesteros cannot prevail on an ineffective
counsel argument based on the safety valve provision, 18 U.S.C. §
3553(f), which states:

> [T]he court shall impose a sentence pursuant
> to guidelines promulgated by the United
> States Sentencing Commission under section
> 994 of title 28 without regard to any
> statutory minimum sentence, if the court
> finds at sentencing, after the Government has

> been afforded the opportunity to make a
> recommendation, that . . . the defendant did
> not use violence or credible threats of
> violence or possess a firearm or other
> dangerous weapon . . . in connection with the
> offense.

18 U.S.C. § 3553(f).  Because Ballesteros stipulated to using

"violence or credible threats of violence or possess[ing] a

firearm or other dangerous weapon in connection with the

offense," and further agreed in the plea allocution that he would

be ineligible for the safety valve provision, it was not

available to him.  (Plea Agmt. 3; Plea Tr. 18).  Schmukler thus

could not have objected.

     Accordingly, as Ballesteros has not demonstrated that

he received ineffective assistance of counsel, his motion is

denied in this respect.

### CONCLUSION

     For the reasons set forth above, Ballesteros has failed

to demonstrate any basis for relief under 28 U.S.C. § 2255.  The

motion is therefore denied.  Because Ballesteros has not made a

substantial showing of the denial of a constitutional right, I

decline to issue a certificate of appealability.  See 28 U.S.C.

§ 2255 (1996) (as amended by the Antiterrorism and Effective

Death Penalty Act).  I certify pursuant to 28 U.S.C. § 1915(a)(3)

that any appeal taken from this decision and order would not be

taken in good faith.

The Clerk of the Court shall close this case.

SO ORDERED.

Dated:    New York, New York
          March 16, 2007

                                    _____
                                    DENNY CHIN
                                    United States District Judge